IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES BRYSON, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 15-3405 |
| | : | |
| CAROLYN W. COLVIN, | : | |
| Acting Commissioner of Social | : | |
| Security, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION**

**TIMOTHY R. RICE**                                                                              February 2, 2016
**U.S. MAGISTRATE JUDGE**

      Plaintiff James Bryson alleges the Administrative Law Judge ("ALJ") erred in denying his application for Disability Insurance Benefits ("DIB") by failing to: (1) support her determination with substantial evidence at Steps 2, 3, and 5;[1] (2) properly weigh the medical opinion evidence; and (3) properly evaluate his credibility.  See Pl. Br. (doc. 9) at 1-2.  I recommend Bryson's request for review be denied.

PROCEDURAL HISTORY

      Bryson completed his application for DIB benefits on February 8, 2012, alleging disability as of May 5, 2012.  R. at 29, 69, 186.  Following a hearing, the ALJ denied Bryson's claim in an October 2013 opinion.  Id. at 14-22.  The ALJ determined Bryson had two severe

---

[1]    Applying the five-step sequential analysis, the ALJ considers whether a claimant: (1) is engaged in substantial gainful employment; (2) has any severe impairments, which significantly limit her ability to perform basic work; (3) has impairments that meet or equal the criteria associated with specific impairments that mandate a disability finding; (4) has an RFC to perform work with her limitations and can return to her previous work with that RFC; and (5) can perform any other work existing in the national economy.  See 20 C.F.R. § 404.1520(a)(4)(i)-(v).

impairments that did not meet or medically equal a Listing[2]: (1) depression; and (2) anxiety with panic attacks. Id. at 16. She also found he had suffered a recent heel fracture, but that it would not be considered severe because it had not led to any work-related limitations expected to last 12 months. Id.

The ALJ then found Bryson's impairments caused only mild limitations in activities of daily living, moderate limitations in social functioning and concentration, persistence, or pace, and he had experienced no episodes of decompensation. Id. at 17. She concluded Bryson had the Residual Functional Capacity ("RFC") to perform limited light work,[3] discredited his statements as to the severity of his symptoms, and relied on testimony from a vocational expert ("VE") to conclude he could work in positions such as bottling line attendant, line bakery worker, or fruit distributor. Id. at 18-21.

## FACTUAL HISTORY

Bryson, 46 years old at the time of the ALJ's decision, had just moved into his own home after separating from his spouse of 18 years. R. at 36, 50. Two of his sons were living with him part-time. Id. at 32-33. Bryson had been diagnosed with Bipolar Disorder[4] years ago, and

---

[2] The Listing of Impairments in Appendix 1, Subpart P, Part 404 of 20 C.F.R. is a regulatory device used to streamline the decision-making process by identifying those claimants whose medical impairments are so severe they would be found disabled regardless of their vocational background. Sullivan v. Zebley, 493 U.S. 521, 532 (1990). The Listing defines impairments that would prevent an adult, regardless of age, education, or work experience, from performing any gainful activity, not just substantial gainful activity. Id.; 20 C.F.R. § 404.1525(a) (purpose of the Listing is to describe impairments severe enough to prevent a person from doing any gainful activity). The Listing was designed to operate as a presumption of disability, making further inquiry unnecessary. Sullivan, 493 U.S. at 532.

[3] The ALJ limited Bryson to unskilled work that demands only occasional direct interaction with the general public and coworkers and does not include working at a production rate pace or require constant pushing and pulling of materials. R. at 18.

[4] Individuals with bipolar disorder experience alternating manic episodes, in which "there

addressed his mental impairment with psychotropic medications provided by his family physician. Id. at 355. A high school graduate, Bryson most recently worked as a commercial truck driver. Id. at 37-38.

In January 2011, Bryson's teenage son was tragically killed in a car accident. Id. at 355. He immediately stopped working and his family practitioner diagnosed him with bereavement as adjustment reaction, severe depression, insomnia, and anxiety. Id. at 219, 335. When Bryson returned to his job, he found commercial driving caused him to have panic attacks, and he resigned. Id. at 50-51. In August 2011, Bryson began seeing a psychiatrist and a therapist. Id. at 355.

Bryson received unemployment benefits until approximately August 2013, and filed for DIB in January 2012, citing major depressive disorder and generalized anxiety disorder. Id. at 33, 69. He was "[d]riving heavy loads all day long 10-12 hours a day," and believed it was "to[o] much stress on [his] body and mind . . . [because he was] in no shape mentally to perform [his] duties at work and need[ed] time to work on [him]self." Id. at 306. In February 2012, Bryson's wife described him isolating himself, crying, pacing, having panic attacks, and eschewing former hobbies like boating, archery, and sports. Id. at 275-79. Bryson's self-report was similar; he claimed he could walk only 50-100 yards before resting, and could pay attention for only one to two minutes at a time. Id. at 283-90.

In March 2012, Bryson's therapist wrote a letter supporting his request for disability benefits, noting Bryson had good attendance at his bi-weekly appointments, and had been diagnosed with Bipolar Disorder, recurrent severe depressive disorder, Obsessive Compulsive

---

is an abnormally and persistently elevated, expansive, or irritable mood," and major depressive episodes, in which "there is either depressed mood or the loss of interest or pleasure in nearly all activities." Diagnostic and Statistical Manual of Mental Disorders IV-TR ("DSM-IV") 349, 357, 382 (4th ed. Am. Psychiatric Assoc. 2000).

Disorder,[5] and Attention Deficit Hyperactivity Disorder.[6]  Id. at 340.  Bryson's therapist opined he had suffered "an emotional breakdown," and "require[d] more time for treatment."  Id.  That same month, Jonathan Rightmyer, Ph.D., reviewed Bryson's records on behalf of the Social Security Administration ("SSA") and found Bryson had demonstrated only mild restrictions in his activities of daily living and moderate restrictions in his social interactions and concentration, persistence and pace.  Id. at 72.  Dr. Rightmyer concluded Bryson could still perform "simple routine tasks."  Id.

In May 2012, Bryson reported his depression and anxiety had worsened in recent weeks, and noted it was "hard to go on with everyday chores and take care of [his] children, as well as keep [his] house in order."  Id. at 313.  In August 2012, Bryson's psychiatrist, Dr. El-Borno, wrote a letter in support of Bryson's request for benefits, opining that, although Bryson's "biological condition was stabilized, he continued to experience situational anxiety and depression for which he received individual counseling with a therapist."  Id. at 342.  Bryson's therapist sent another copy of his previous letter opining he "require[d] more time for treatment."  Id. at 344.

In June 2013, Bryson's psychiatrist wrote his second letter to support Bryson's request for benefits, stating that although Bryson had been "optimally stabilized on medication for several months . . . there has never been a restoration of functionality."  Id. at 355.  Dr. El-Borno opined Bryson's "severe mental illness has worsened to such an extent, that it is quite unlikely that he will recover to a premorbid level of function."  Id.  Although Bryson reportedly saw Dr.

---

[5]   Individuals with Obsessive-Compulsive Disorder are anxious due to inappropriate and intrusive ideas, thoughts, impulses, images or repetitive behaviors.  DSM-IV at 456-57.

[6]   Individuals with ADHD display a developmentally inappropriate "persistent pattern of inattention and/or hyperactivity-impulsivity."  DSM-IV at 85.  ADHD can manifest with predominantly inattentive, predominantly hyperactive, or combined features.  Id.

4

El-Borno for medication management and a therapist for weekly sessions throughout the disability period, to support his claim for benefits he produced only: (1) two letters from Dr. El-Borno; (2) two nearly identical copies of one letter from his therapist; and (3) four pages of medication documentation.  Id. at 340, 342, 344, 355, 362-66.  Although the ALJ specifically requested additional records almost four months before the hearing, Bryson produced no medical records from his therapist or his psychiatrist to support his claim.  Id. at 138.

In mid-August 2013, Bryson fell 10 feet off the roof of his shed while installing a weathervane.  Id. at 45, 369.  He was described as "pleasant" at the hospital four days later, when he was admitted to have hardware surgically installed to fix a fracture in his left heel.  Id. at 369-70.  The surgery was successful and there were no complications.  Id. at 377-78, 381, 383.

At his ALJ hearing on October 3, 2013, Bryson admitted he had regularly attested that he was able and available to work since his alleged onset date, and confirmed he had been capable of working as a trucker.  Id. at 34-35.  He contended, however, that he had become truly unable to work in the prior one to two months, after he and his wife sold the house they had shared.  Id. at 35-36.  Although he was still able to function as a single parent for his sons, and could make them breakfast, play games with them inside or outside and take them on errands, he no longer had adequate concentration to pursue his previous hobbies like hunting and coaching sports.  Id. at 47-48, 54.  Because he does not want his sons to see how depressed he is, he "keeps it from them" and "tries to keep a smile on."  Id. at 44, 53.  He had been offered jobs while receiving unemployment benefits but had not accepted them "because [he] just didn't think that [he] was suited for the job, and that [he] could perform it to the best of [his] ability."  Id. at 51.

5

DISCUSSION

I.   Standard of Review

I must accept all the ALJ's fact findings if supported by substantial evidence, that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390 (1971); see also 42 U.S.C. § 405(g). I "review the record as a whole to determine whether substantial evidence supports a factual finding," Zirnsak, 777 F.3d at 610, but I may not re-weigh the evidence or substitute my own conclusions for those of the ALJ. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011). I also must conduct a "plenary review" of the ALJ's legal conclusions. Payton v. Barnhart, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006). Thus, I can overturn an ALJ's decision for a legal error even if I find it was supported by substantial evidence. Id.

The ALJ must evaluate all relevant evidence in the record. Fargnoli v. Massanri, 247 F.3d 34, 41 (3d Cir. 2001); Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000); Cotter v. Harris, 642 F.2d 700, 704, 706 (3d Cir. 1981). The ALJ may not make speculative inferences from medical evidence, see, e.g., Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981), and cannot reject evidence for no reason or for the wrong reason, Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505 (3d Cir. 2009). The ALJ, therefore, must explain the evidence supporting her findings and the reasons for discounting the evidence she rejects. Id. at 505-06; Cotter, 642 F.2d at 705-06. This permits a reviewing court to determine whether significant probative evidence was improperly rejected or simply ignored. Burnett, 220 F.3d at 121; Cotter, 642 F.2d at 706-07.

II.   Step Two Findings

Bryson contends the ALJ failed to provide substantial evidence supporting her finding that his heel fracture was not a severe impairment, and that she should also have found his

obesity was a severe impairment.  Pl. Br. at 6-8.

The burden placed on the claimant to establish a severe impairment "is not an exacting one."  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004); see also Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546-47 (3d Cir. 2003) (the step-two inquiry is a de minimis screening device).  A medically determinable impairment is severe as long as the claimant demonstrates "something beyond 'a slight abnormality or a combination of abnormalities which would have no more than a minimal effect on an individual's ability to work.'"  McCrea, 370 F.3d at 360 (quoting SSR 85-28, 1985 WL 56856, at *3); see also Bowen v. Yuckert, 482 U.S. 137, 153 (1987).  "Any doubt as to whether this showing has been made is to be resolved in favor of the applicant."  Id.

An ALJ must "consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity."  See SSR 02-1p, 2002 WL 628049 (Sept. 12, 2002).  The ALJ, however, is not required to discuss obesity if the claimant does not identify obesity as an impairment and offer evidence showing its effect on performance.  Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3d Cir. 2005); Rickabaugh v. Astrue, No. 08-228J, WL 1142041, at *5 (W.D. Pa. Mar. 24, 2010) (ALJ was not required to analyze obesity because claimant did not assert obesity and the ALJ did not expressly find that claimant's obesity was a severe impairment).

The ALJ found Bryson had suffered a heel fracture in August 2013, two months before the hearing, and surgery had successfully addressed it.  R. at 16.  She noted that "[t]he record fails to establish any complication from the claimant's fracture or that he has related work limitations that are expected to last a minimum of a 12-month period."  Id.

7

My independent review of the records supports the ALJ's determination, and no evidence suggests Bryson's recovery will take 12 months. Thus, the ALJ set forth substantial evidence to support her determination that Bryson's heel fracture was not a severe impairment. Moreover, although Bryson met the obesity requirements, he never complained of obesity as an impairment. R. at 69, 309, 321. He did not specify how his obesity has affected his ability to work, Pl. Br. at 506, and did not testify about any obesity-related functional limitations during his ALJ hearing, R. at 30-54. The ALJ was not required to discuss Bryson's obesity because consideration of the impairment would not have affected the outcome of his case. See Rutherford, 399 F.3d at 552-53.

III.    Listings

Bryson contends the ALJ failed to support her decision that he did not meet Listing 12.04 with substantial evidence, and failed to address Listing 12.06 entirely. Pl. Br. at 8-12.

To satisfy a Listing under 20 C.F.R. Pt. 404, Subpt. P., App. 1, §§ 12.04 and 12.06 for mental disorders, Bryson must meet the requirement of Part A and two of the four categories in Part B: marked[7] impairments in: (1) activities of daily living; (2) social functioning; (3) maintaining concentration, persistence, or pace; and (4) repeated episodes of decompensation, each of extended duration, (or Part C, which is not at issue here). The ALJ denied Bryson's claim because his Part B limitations were only mild or moderate, not more extreme, i.e., marked.

---

[7] The severity of mental impairments are evaluated by using a special technique that rates the claimant's degree of limitation in the four functional areas by grading them on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). Impairments that cause limitations rated "none" or "mild" are generally not considered severe. Id. at § 404.1520a(d)(1). A "marked" limitation, which is less than "extreme" but more than "moderate," "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [a claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." Id. at Pt. 404, Subpt. P, App. 1§ 12.00C.

R. at 17.

Bryson claims marked limitations in two categories: (1) social functioning, and (2) maintaining concentration, persistence or pace. Pl. Br. at 10-11. He further contends the ALJ ignored evidence that supported his limitations. Id. at 10-12. I disagree and find the ALJ's determination was supported by substantial evidence.

The ALJ was confronted with a mixed evidentiary record and gave explanations for why she credited certain aspects of Bryson's medical history. R. at 17. Bryson claims his own function reports, corroborated by the function report submitted by his estranged wife, establish his paranoia and inability to endure large crowds. Pl. Br. at 10. He further notes that his psychiatrist and therapist opined he was suffering from "uncontrolled mood modulation and regulation and rumination of his life events." Id. at 11.

The ALJ, however, credited Bryson's self-report and that of his estranged wife, and noted their separation and his limited interactions with others. R. at 17. She weighed that evidence against the evidence that he was pleasant and cooperative with treating sources, id. at 369, has friends that come to his home and comfort him when he is mourning his son, id. at 52, and his demeanor at the hearing, id. at 17. Final responsibility for determining whether a claimant's impairment meets a Listing is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2). The ALJ here set forth substantial evidence to support her conclusion.

Moreover, independent review of the record further supports her determination. Bryson admitted he is able to "keep a smile on" while in the presence of his sons, R. at 44, he reached a custody arrangement with his estranged wife without conflict, id. at 32, and when Dr. Rightmyer reviewed Bryson's records on behalf of the SSA he found that, despite Bryson's marital discord and continued bereavement, he had only demonstrated moderate restrictions in social

9

functioning, id. at 72.

Similarly, substantial evidence justified the ALJ's determination that Bryson was only moderately impaired in concentration, persistence or pace. Bryson again cites evidence from his function report, the report from his estranged wife, and the letter from his therapist to support his contention. Pl. Br. at 11. The ALJ, however, noted the limitations described by Bryson and his former spouse: she specifically listed his allegations of difficulty concentrating and focusing, loss of interest in activities, and excessive time spent sleeping, watching television, or reading. R. at 17. She weighed that evidence against Bryson's admissions that he spends time with his children, plays games with his youngest son, is capable of driving, was motivated and focused to undertake activities like putting up a weathervane, lives on his own, handles his own finances, pays bills, and can follow a routine well enough to consistently attend his mental health appointments. Id. Such evidence is sufficient to support her conclusion that Bryson suffered only moderate limitations in concentration, persistence, or pace.[8]

    IV.    <u>Opinion Evidence</u>

Bryson alleges the ALJ failed to assign adequate weight to the opinion of his treating psychiatrist, Dr. El-Borno, and inappropriately assigned great weight to the opinion of the reviewing psychologist, Dr. Rightmyer. Pl. Br. at 12-16.

Treating physicians' opinions are entitled to "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the case. 20 C.F.R. § 404.1527(c)(2). Otherwise, they are assessed based on the "length of the treatment relationship and the frequency

---

[8] Once again, an independent review only further supports the ALJ's determination, as Bryson himself admitted that, until one to two months prior to the ALJ hearing, he was capable of working as a trucker. R. at 34-35.

of the examination," the "nature and extent of the treatment relationship," the opinion's "supportability," the opinion's "consistency" with the record as a whole, the opining physician's "specialization," and other factors like the opining physician's familiarity with the standards of the Social Security program. Id. § 404.1527(c)(2) – (6).

The ALJ may not reject evidence for no reason or for the wrong reason. Diaz, 577 F.3d at 505. For instance, the ALJ may not ignore medical evidence in favor of her own conclusions. Van Horn v. Schweiker, 717 F.2d 871, 874 (3d Cir. 1983). The ALJ must explain the evidence supporting her findings and the reasons for discounting the evidence she rejects. Diaz, 577 F.3d at 505-06; Cotter, 642 F.2d at 705-06. The final responsibility for making any dispositive decision is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2).

The ALJ had substantial evidence to afford "partial weight" to Dr. El-Borno's opinion that Bryson may never fully recover his previous level of functionality. R. at 20, 355; see § 404.1527(d)(1) (only the Commissioner can make a finding of disability). Bryson argues the ALJ ignored the consistency of Dr. El-Borno's opinion with a January 2011 certification for family medical leave from Bryson's family doctor, and a March 2012 letter from Bryson's therapist. Pl. Br. at 14. In January 2011, Bryson's primary care physician certified he would be incapacitated from January through April 2011, and in March 2012 his therapist opined he had suffered an emotional breakdown that had impacted his ability to function. R. at 335, 340.

The ALJ nowhere disagreed with Dr. El-Borno's opinion that Bryson had not – and may not ever – fully recover from his son's death. She agreed Bryson "is not capable of returning to his past work." Id. at 20. She further found, however, that his level of disability did not preclude more limited forms of employment. Id. Bryson mistakenly suggests he submitted "expert medical evidence, which would have directed a finding, that [he] is unable to engage in

11

substantial gainful activity." Pl. Br. at 15. The record establishes no such expert testimony. The ALJ's finding conflicts with Dr. El-Borno's opinion only to the extent that Dr. El-Borno submitted his letter in "support of [Bryson's] application for disability benefits." Id. at 21-22.

Moreover, Bryson fails to note that both documents he claims conflict with the ALJ's opinion, but support Dr. El-Borno's opinion, are dated before the alleged onset date of May 2012. The same family doctor who certified Bryson was entirely incapacitated in January 2011 later certified that, although he was still experiencing "depression/bereavement," Bryson was cleared to return to "full duties" in April 2011. R. at 333.

Bryson further alleges the ALJ improperly assigned Dr. Rightmyer's opinion great weight. Pl. Br. at 21-22. The ALJ explained she assigned Dr. Rightmyer's opinion great weight because it was "well supported by the clinical findings and the claimant's gradual improvement with treatment." R. at 20. The only clinical findings Bryson submitted were the record of his medications which, as Dr. El-Borno noted, had "optimally stabilized" Bryson's condition for several months by June of 2013. Id. at 355. Bryson admitted his therapy sessions were "helping." Id. at 42. He fails to cite evidence to support his argument that the ALJ inappropriately assigned great weight to Dr. Rightmyer's opinion and further fails to cite evidence that shows Dr. Rightmyer's and Dr. El-Borno's opinions conflicted.

Substantial evidence supports the ALJ's decision.

V.  RFC

Bryson claims the ALJ failed to support her RFC finding with substantial evidence because limiting him to jobs with "simple duties learned on the job in a short period of time" with "occasional direct interaction with the general public and coworkers" did not adequately reflect her finding that he suffered moderate impairment in his concentration, persistence, or

pace. Pl. Br. at 17.[9]

The ALJ is responsible for determining a claimant's RFC. § 404.1546(c). Although the ALJ will consider the RFC opinion of other sources, the ultimate determination is always reserved for the ALJ. § 404.1527(d)(2). The RFC is defined as the most a claimant can do despite their limitations, and is based on "all the relevant evidence" in the record. § 404.1545(a)(1). The regulations define concentration, persistence, and pace as "the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P., App. 1, section 12.00(C)(3).

The ALJ explained she "concurs" with Dr. El-Borno that Bryson "may not regain his baseline of functioning," and therefore restricted him to "unskilled work tasks with restrictions in social interaction and production rate pace." R. at 20. The ALJ reasoned that those limitations were "commensurate with the clinical findings and treatment history." Id. She further noted she had "provided for no more than light work tasks based on [Bryson's] complaints of the loss of will to stand, walk, and bend, which are secondary to his depression, loss of interest in activities and disturbed sleep patterns." Id.

The cases Bryson cites are distinguishable.[10] The ALJ conducted an individualized

---

[9] Bryson also contends the ALJ's RFC was incomplete because she failed to make any findings as to his limitations in standing, walking, and sitting. Pl. Br. at 17. This is incorrect. By limiting Bryson to light work that does not require pushing and pulling of materials, the ALJ also limited him to six hours walking or standing in an eight-hour workday. SSR 83-10, 1983 WL 31251, at *6 (1983); see also 20 C.F.R. § 404.1567(b). Moreover, Bryson alleged no limitation in sitting, and any limitations in standing or walking due to his heel injury were not considered because he failed to produce evidence to show that injury would last for 12 months. R. at 69, supra at 8; see also SSR 96-8p, 1996 WL 374184, at *3 (1996) ("when there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity").

13

inquiry, and the RFC incorporated the limitations Bryson complained of with respect to his concentration, social functioning, pace, and loss of will. Id.; see also Allen v. Barnhart, 417 F.3d 396, 407 (3d Cir. 2005) (requiring individualized inquiry into RFC of claimants with non-exertional limitations). Bryson's prior work was heavy and semi-skilled. R. at 58. The ALJ limited him to work based on the specific functional limitations he described. § 404.1527(d)(2); see also Menkes v. Astrue, 262 F. App'x 410, 412-13 (3d Cir. 2008) (moderate limitation in concentration, persistence or pace was accounted for by limiting claimant that had previously performed skilled and semi-skilled work to "simple routine tasks"); McDonald v. Astrue, 293 F. App'x 941, 946 (3d Cir. 2008) (moderate limitation in concentration, persistence or pace was accounted for by limiting claimant to "simple, routine tasks [without] noise extremes and bright or sudden light changes"); McBeth v. Colvin, No. 12-3583, 2013 WL 6061364 at *5 (E.D. Pa. Nov. 18, 2013) (moderate limitation in concentration, persistence or pace was accounted for by limiting claimant to "unskilled work, with routine repetitive tasks"). The ALJ's RFC was supported by substantial evidence.

VI.     Credibility

Finally, Bryson contends the ALJ improperly found his and his estranged wife's "statements concerning the intensity, persistence and limiting effects" of his symptoms "not entirely credible." Pl. Br. at 18 (citing R. at 19).

I must defer to the ALJ's credibility determinations based on her ability to observe the claimant's demeanor. Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003). The reasons

---

10      In Steininger v. Barnhart, No. 04-5383, 2005 WL 2077375, at *3 (E.D. Pa. Aug. 24, 2005), the ALJ failed to include any limitation to account for an inability to work at production pace, and in Barry v. Astrue, No. 05-1825, 2007 WL 2022085, at *3-4 (E.D. Pa. July 9, 2007), the ALJ had rejected the plaintiff's claims of moderate limitations in concentration, persistence, or pace entirely.

supporting credibility findings, however, must be substantial and bear a legitimate nexus to the findings as demonstrated by inconsistent statements, contradictory evidence, or inherently improbable testimony. Id.; accord St. George Warehouse, Inc. v. NLRB, 420 F.3d 294, 298 (3d Cir. 2005) (credibility determinations should not be reversed unless "inherently incredible or patently unreasonable" as long as the ALJ considers all relevant factors and explains her decisions). If supported by substantial evidence, the ALJ's credibility findings may not be disturbed on appeal. Hirschfeld v. Apfel, 159 F. Supp. 2d 802, 811 (E.D. Pa. 2001).

The ALJ noted Bryson's testimony that, despite his mental impairment, he managed to: (1) live by himself and share custody of his sons; (2) care for his children; (3) shop; (4) drive; (5) work on home improvement projects like putting up a weathervane (even while alleging he was only sleeping, reading, or watching television all day); (6) play games with his younger son; and (7) take his older son to friends' houses. R. at 20. She further noted he had received ongoing psychiatric treatment and was benefiting from medication. Id. Bryson argues his ability to perform daily activities does not translate into an ability to work full-time, and that the fact that he has received ongoing treatment and is benefiting from medication "does not automatically indicate" that he "lacks symptoms or limitations."[11] Pl. Br. at 18-19.

The ALJ did not find Bryson lacks symptoms or limitations. The ALJ clearly set forth substantial evidence to support her credibility determination, even though she never denied Bryson's allegations that he was ill, or suffering, or that his functionality had greatly decreased after the death of his son. She did find, however, that his ability to perform even an extremely limited scope of work precludes finding him disabled. See § 404.1505 ("[t]he law defines

---

[11] Bryson cites Bennett v. Barnhart, 265 F. Supp. 2d 238, 255 (W.D. Pa. 2003) in support of this argument. Id. Bennett, which addressed the ALJ's ability to extrapolate the claimant's functionality based on his behavior in "a structured hospital or treatment setting," is inapposite.

disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months"). Bryson has failed to present any plausible argument otherwise.

Accordingly, I make the following:

**R E C O M M E N D A T I O N**

AND NOW, on February , 2016, it is respectfully recommended that Plaintiff's request for review be DENIED and judgment be entered for the Commissioner. Plaintiff may file objections to this Report and Recommendation within fourteen days after being served with a copy thereof. See Fed. R. Civ. P. 72. Failure to file timely objections may constitute a waiver of any appellate rights. See Leyva v. Williams, 504 F.3d 357, 364 (3d Cir. 2007).

BY THE COURT:

*/s/ Timothy R. Rice*
TIMOTHY R. RICE
U.S. MAGISTRATE JUDGE